# CIRCUIT COURT, U. S.

## CHARLESTON, MAY, 1819.

### *The Maria Josepha, and cargo.*—DECREE.

Salvage.       Questions of salvage are always questions of the most
disagreeable kind. In vain the mind looks for relief, in
its anxiety to do justice, by seeking the aid of fixed rules
and principles. Such questions are addressed exclu-
sively to discretion, and that discretion must move in a
range to which there are no defined limits. This is at-
tended with another embarrassing circumstance. It is
impossible to separate the question of salvage from that
which must finally dispose of the residue of this vessel
and cargo. The same rule cannot be applied indiffer-
ently to both parties claimants. If the residue ought to
be restored to the Spanish claimant, then no salvage can
be demanded; if the treaty applies to the case, or if it
does not apply, then much higher salvage ought to be
paid than if it be adjudged to the captor. The princi-
pal question in the case, then, is forced upon me before
I can dispose of that salvage; and here I cannot hesi-
tate on the decision that must be made. The law of
nations requires of the United States the observation of
strict neutrality between the belligerents. *Flagrante bello*,
no neutral nation is bound to pursue a course of con-
duct that may, ultimately, embroil it with the victor.
We found the property in possession of one of the bel-
ligerents, and we are bound to leave it there. It is
enough for us that we see a state of open war existing
between two powers who are able to maintain it. The

question of right is with the God of armies. This is no recognition of the independence of Buenos Ayres; it is the recognition of a *fact* known to all the world, and admitted by the claimant himself; that of a state of open war between Spain and one of her colonies. This is the most solemn and notorious act by which nations can exhibit their independence to the rest of the world; and, whilst the struggle continues, other nations are not at liberty to distinguish between fact and right. Under these impressions, I award one fifth of the nett proceeds to the libellant; convinced that, had the captors been consulted at the time the vessel was taken charge of, they would have freely given that proportion to secure the rest; and that the libellants ought to be satisfied with eight thousand dollars for the service rendered.

There is another point on which I feel myself called on to make a remark: that is, the effect of the treaty between Spain and the United States. The sixth article has no bearing on the case. The object of that article is the protection of the vessels or effects of Spanish subjects from seizure, at the time of their being within our jurisdiction. Nor does the case come under the 9th article, since, in whatever light Spain may think proper to consider the cruisers of her enemy, they are *not pirates* in the view of other nations; and as to the second section of the 14th article, it makes no provision for the restitution of property captured by citizens who have accepted commissions to cruise against Spain. The provisions are, that no citizen shall accept such a commission, and that he who accepts such a commission shall be punished as a pirate. In a government of laws, every thing has been done which good faith required to be done. Laws have been passed, and our courts are open for the punishment of such as accept of commissions under the enemy of Spain. But information must be lodged and evidence produced, before it can be required of the courts of justice to punish those offenders. For any thing farther Spain must depend upon the vigilance, activity and intelligence of her agents; and in no case is it, or can it be made, an addition to the punishment of such offenders, that the property shall be restored, unless the United States may be made liable for indemnity; for when the capture is made, the property

*Margin note:* CHARLESTON, May, 1819. The Maria Josepha and cargo.

CHARLES-
TON,
May, 1819.

The Maria
Josepha and
cargo.

is vested in the government that grants the commission. It is the seizure of the state, and not of the individuals.

In the case before us, there is no evidence that the San Martin privateer was fitted out in the U. States. She has, indeed, very improperly, recruited her crew within our limits; and every individual concerned in that transaction will be punished, if prosecuted. But all the world knows that the arbitrary exertion of power is unknown to the genius of our constitution, and all that any state can expect of the United States is, that adequate laws should be passed to punish and prevent the commission of such acts. When acts are done in evasion of those laws, unless the government can be charged with winking at those evasions, it is not liable to indemnify Spain for such captures; and our courts of justice cannot, on that ground, violate the obligation of neutrality by seizing and restoring prizes that have been made by either party.

[Signed]                                    WM. JOHNSON.

---

# DISTRICT OF DELAWARE, 1818.

> The United States of America
> v.                                    } LIBEL.
> The sloop Pitt, her tackle, &c.

Construction
of the act en-
titled an act
concerning
navigation,
passed April,
18th, 1818.

Libel for entering a port of the United States, against the provisions of an act of congress, entitled, "an act concerning navigation," passed on 18th April, 1818. Process returnable at Dover, 16th November, 1818.

> The same
> v.                                    } LIBEL FOR SAME
> The goods, wares and merchandize      CAUSE, &c.
> laden on board the sloop Pitt.

These cases on the preliminary question of the right of the claimants to a delivery of the vessel and cargo on stipulated bonds, were argued before Fisher, district judge, by Mr. Read, district attorney, on the part of the